# EXHIBIT A

Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York , NY 10036-7703
(212) 775-8700
Counsel for Plaintiff Larry Chenault

---

LARRY CHENAULT,

                 Plaintiff,

       v.

VICTORY HIGHLANDS
CONDOMINIUM ASSOCIATION,
INC., MARSHALL & MORAN, LLC,
NEW JERSEY PROPERTY-LIABILITY
INSURANCE GUARANTY
ASSOCIATION (as successor to LMI
INSURANCE COMPANY and
HIGHLANDS INSURANCE
COMPANY), CLARENDON
AMERICA INSURANCE COMPANY,
and IMPERIUM INSURANCE
COMPANY (f/k/a SIRIUS AMERICA
INSURANCE COMPANY),

                 Defendants.

---

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:  ESSEX COUNTY

DOCKET NO.: ESX-L-3078-10

**CIVIL ACTION**

**FIRST AMENDED COMPLAINT**



FILED

JUL – 8 2014

---

Plaintiff Larry Chenault, owner of a condominium property, 9 Victory Court, in the

Borough of Victory Gardens, Morris County, New Jersey, states the following as his First

Amended Complaint against defendants named herein:

## NATURE OF ACTION

    1.      This is an action to recover damages for bodily injury and property damage

resulting from the negligence of defendants Victory Highlands Condominium Association, Inc.

("VHCA") and Marshall & Moran LLC ("Marshall & Moran") that caused the formation and

1

growth of toxic mold in the condominium residence of Plaintiff Larry Chenault, No. 9 Victory Court, Victory Gardens, Morris County, New Jersey, part of a multi-unit condominium facility owned and operated by VHCA. In addition, in accord with the Order and Opinion of this Court entered on April 11, 2014, plaintiff Chenault also asserts claims seeking a declaratory judgment against the insurers for VHCA and Marshall & Moran, as additional insured, declaring that the policies they issued to defendants during the period from June 1, 1991 to June 1, 2010 provide coverage for the claims asserted by plaintiff herein.

## PARTIES

2.      Plaintiff Larry Chenault (hereafter "plaintiff" or "Mr. Chenault") is owner of a condominium residence, 9 Victory Court, in the Borough of Victory Gardens, Morris County, New Jersey, where he resided continuously from July, 1991 until late March, 2009, when he left his condominium residence to minimize further, injurious exposure to toxic mold. Mr. Chenault remains a current resident of Morris County, New Jersey.

3.      Defendant VHCA is a homeowners association incorporated and operated pursuant to the New Jersey Condominium Act, N.J.S.A. 46:8B-1, et seq. and at all times alleged herein owned, operated and managed a condominium development known as Victory Highlands, which encompassed Mr. Chenault's condominium residence at 9 Victory Court.

4.      Pursuant to a contract with VHCA entered into on or about November 6, 2003, as periodically amended, defendant Marshall & Moran acted as property manager for VHCA from 2003 through 2010 and was responsible for carrying out specified duties regarding the maintenance, repair, and operation of the Victory Highlands condominiums, including Mr. Chenault's condominium residence at 9 Victory Court.

2

US2008 5767830 1

5.      Defendant Newark Insurance Company, n/k/a Arrowpoint Capital (hereafter "Newark"), issued a series of three commercial general liability policies insuring VHCA, as named insured, for liability attributable to occurrences of bodily injury and property damage during the period from June 1, 1991 to June 1, 1994, which encompassed the period of time that Mr. Chenault owned and resided in his condominium residence, 9 Victory Court. The policy numbers, limits and the duration of coverage provided by Newark to VHCA are shown on the summary chart affixed hereto as Exhibit A.

6.      Defendant New Jersey Property Liability Insurance Guaranty Association (Hereafter "PLIGA"), is by operation of New Jersey law, responsible for paying losses up to $300,000 annually, for liability claims made against policies issued by insolvent insurers, that provided coverage to VHCA, as named insured, for liability attributable to occurrences of bodily injury and property damage during the period from June 1, 1994 to June 1, 1997 and possibly continuing to June 1, 2000, which encompassed the period of time that Mr. Chenault owned and resided in his condominium residence, 9 Victory Court. The policy numbers, and coverage amounts allocable to PLIGA, as well as the duration of coverage provided to VHCA by insolvent carriers, are shown on the summary chart affixed hereto as Exhibit A.

7.      Defendant Clarendon Insurance Company (hereafter "Clarendon") issued a commercial general liability policy insuring VHCA, as named insured, for liability attributable to occurrences of bodily injury and property damage during the period from June 1, 2000 to June 1, 2001, which encompassed the period of time that Mr. Chenault owned and resided in his condominium residence, 9 Victory Court. The policy number, limits and the duration of coverage provided by Clarendon to VHCA are shown on the summary chart affixed hereto as Exhibit A.

3

8.      Defendant Sirius Insurance Company, n/k/a Imperium Insurance Company (hereafter "Sirius") issued a series of four commercial general liability policies insuring VHCA, as named insured, the last three of which also insured Marshall & Moran as additional insured, for liability attributable to occurrences of bodily injury and property damage during the period from June 1, 2001 to June 1, 2005, which encompassed the period of time that Mr. Chenault owned and resided in his condominium residence, 9 Victory Court. The policy numbers, limits and the duration of coverage provided by Sirius to VHCA and Marshall & Moran are shown on the summary chart affixed hereto as Exhibit A.

9.      Defendant American Guarantee & Liability Insurance Company (hereafter "Zurich") issued a series of umbrella liability policies insuring VHCA, as named insured, and Marshall & Moran, as additional insured, for liability attributable to occurrences of bodily injury and property damage during the period from June 1, 2005 to June 1, 2010, which encompassed the period of time that Mr. Chenault owned and resided in his condominium residence, 9 Victory Court. The Zurich policies "drop down" to provide primary coverage for insured losses that are not covered by the underlying primary coverage issued to VHCA by QBE Insurance Corp. The policy numbers, limits and the duration of coverage provided by Zurich to VHCA and Marshall & Moran are shown on the summary chart affixed hereto as Exhibit A.

## DEFENDANTS' NEGLIGENT ACTS CAUSED FORMATION OF TOXIC MOLD

10.      At various times after Mr. Chenault purchased and moved into his condominium residence at 9 Victory Court, he noticed and complained to VHCA and others of water intrusion problems in the basement and elsewhere in his condominium residence.

11.      The water intrusion resulted from VHCA's negligent acts and omissions in failing to maintain and properly repair faults in the foundation, walls, adjacent grounds and drainage of

4

US2008 5767830 1

the building where plaintiff's condominium residence was located, leading to constant and ongoing incidents of water intrusion into the premises beginning in 1991 and continuing during the entire period of time that plaintiff resided at 9 Victory Court.

12.     VHCA's offering statement and accompanying bylaws, as amended, obligated VHCA to maintain and repair the premises, including the building and surrounding common areas, to avoid creating potentially dangerous hazards, such as water intrusion, that could and did cause mold-related bodily injury to plaintiff and damage to plaintiff's condominium residence.

13.     Pursuant to its contract with VHCA, defendant Marshall & Moran agreed to act as property manager for Victory Gardens; and as such, Marshall & Moran assumed and/or shared responsibility with VHCA for properly and safely maintaining and repairing the premises, including the building and surrounding grounds where plaintiff's condominium residence was located.

14.     Marshall & Moran negligently failed to perform its duties under its contract with VHCA and its duties imposed by law to properly maintain and repair the premises by remedying and preventing ongoing water intrusion that continued to occur in plaintiff's condominium residence.

15.     The ongoing incidents of water intrusion and leaks into plaintiff's condominium residence caused the formation of toxic mold, which condition was unknown to Mr. Chenault until 2009, when he was advised by a contractor that potentially dangerous black mold appeared to have formed in his condominium residence.

16.     After being advised in March, 2009 of the existence of the possibly dangerous mold in his condominium residence, Mr. Chenault retained a company to obtain air samples and surface swabs from the interior of the condominium that were tested and that revealed that

5

excessive levels of toxic mold, including, but not limited to Stachybotrys, existed in plaintiff's condominium residence.

17.  The Stachybotrys and other categories of toxic mold that were discovered in plaintiff's condominium residence formed as a result of the water intrusion that had been caused by the negligent acts and omissions of defendants VHCA and Marshall & Moran in failing properly to maintain and repair the building's walls, foundation, adjacent grounds and drainage to prevent water intrusion into plaintiff's condominium residence.

18.  Mr. Chenault did not discover the existence of dangerous, toxic mold in his condominium residence until March, 2009; but upon information and belief, such mold had formed shortly after the water intrusion into plaintiff's condominium residence commenced during 1991 and that continued through 2010 as a result of defendants' negligent acts and omissions in failing properly to maintain and repair the premises.

**PLAINTIFFS' CONTINUOUS INJURIOUS EXPOSURE AND DAMAGES**

19.  As alleged above and upon information and belief, during the period commencing in 1991 and continuing thereafter, the ongoing water intrusion into Mr. Chenault's condominium residence caused the formation of toxic mold that was not discovered until after Mr. Chenault had his residence inspected and mold samples were obtained and tested in March, 2009, the results of which revealed the existence of Stachybotrys and other species of toxic mold in his condominium residence.

20.  Upon information and belief, plaintiff Chenault has suffered and continues to suffer serious, adverse health consequences caused by his ongoing, continuous injurious exposure to toxic mold from 1991 through June, 2010, during the period that defendant insurance carriers issued policies covering VHCA and Marshall & Moran against liability for property

6

US2008 5767830 1

damage and bodily injury.  During this period and afterwards, plaintiff has suffered and continues to suffer adverse health effects caused by his exposure to toxic mold in his condominium residence, including, upon information and belief, at least the following:

    a)  Sinusitis and other nasal and respiratory problems;

    b)  Skin lesions, growths and rashes;

    c)  Fatigue, diminished stamina, diminished endurance;

    d)  Tremors;

    e)  Diminished mental capacity, including memory loss;

    f)  Anxiety and depression.

    21.    While some of Mr. Chenault's health issues improved slightly when he moved out of his condominium residence, he has continued to suffer ongoing, adverse health effect caused by his exposure to toxic mold.  Medical testing conducted in 2010 and more recently, in 2014, has confirmed the presence in Mr. Chenault's body of excessive levels of a mold-related mycotoxin, Tricothecene, which upon information and belief, resulted from plaintiff's continuous, injurious exposure to toxic mold in his condominium residence, 9 Victory Court.

    22.    Upon information and belief, the Trichothecene in Mr. Chenault's body is a dangerous poison that may stay in the human body for years and that can cause serious and permanent illness and injury, including, but not limited to, skin rash, dermatitis, degeneration of lungs, cellular damage, memory loss and many, if not all, of the adverse health effect identified above that have been and continue to be suffered by Mr. Chenault.

    23.    The toxic mold that formed in Mr. Chenault's condominium residence, the existence of which was not discovered by plaintiff until March, 2009, caused serious and permanent damage to plaintiff's real and personal property that has not been remediated by

7

defendants and that has reduced the value of plaintiff's condominium residence by causing the premises to be uninhabitable and dangerous to human health, all as a result of defendants' negligent acts and omissions in failing to maintain and repair the premises and in failing to remediate the toxic mold, which continues to exist at 9 Victory Court.

24.     On or about December 10, 2010, the Social Security Administration issued a Determination and Order, a copy of which is attached as Exhibit B, finding Mr. Chenault to be permanently and totally disabled as a result of his exposure to toxic mold in his condominium residence. Upon information and belief, plaintiff Chenault is continuing to suffer ongoing and permanent bodily and mental injury caused by his exposure to toxic mold that formed while he resided in his condominium residence, 9 Victory Court, as a result of the acts and omissions of defendants VHCA and Marshall & Moran in negligently failing to maintain, repair and remediate the dangerous conditions and water intrusion that caused the formation of injurious, toxic mold during the time periods referenced herein.

## DEFENDANTS' INSURANCE POLICIES

25.     The defendant insurance companies named herein issued the policies listed on Exhibit A that provide liability coverage to defendants VHCA and Marshall & Moran for the claims of bodily injury and property damage alleged by plaintiff Chenault.

26.     The evidence confirming the existence of policies issued by defendant insurance companies, as summarized on Exhibit A, was discovered and compiled by an insurance archeologist in accordance with the partial settlement agreement entered into between plaintiff and defendants VHCA and Marshall & Moran on or about May 10, 2012.

27.     In relevant part, Paragraph XVIII of the May 10, 2012 settlement agreement affords plaintiff Chenault the right to reopen this case in the event that "applicable insurance

8

US2008 5767830 1

coverage is identified," so that plaintiff may "maintain his claim against the parties [VHCA and Marshall & Moran] for the sole purpose of attempting to recover under such insurance polic(ies) for damages in excess of [$110,000]."

28.. The policies issued by defendants Newark, Clarendon, Sirius and the carriers for which PLIGA has or would assume responsibility, as shown on Exhibit A, do not contain any exclusion for bodily injury or property damage caused by toxic mold.

29. The policies issued by defendant Zurich during the period from June, 1, 2007 to June 1, 2010, as summarized on Exhibit A, do not contain an exclusion for mold-related bodily injury or property damage if the efficient proximate cause of the formation of injurious toxic mold is a non-excluded cause, such as water intrusion; and those Zurich policies "drop down" to provide primary coverage for the claims of plaintiff Chenault, as alleged herein.

30. After the insurance archeologist discovered evidence of the aforementioned insurance policies, plaintiff Chenault, acting pursuant to the May, 2012 settlement agreement, sent notice to the defendant carriers and to PLIGA advising of his claims and of his right to reopen this case, as allowed by the provisions of Paragraph XVIII of the settlement agreement quoted above.

31. After receipt of notice of plaintiff's claims, defendant Newark retained insurance defense counsel to defend against plaintiff's claims, subject to a reservation of rights.

32. Defendant PLIGA responded to plaintiff's notice of his claims by letter dated September 13, 2013, a copy of which is attached as Exhibit C, advising that it would investigate Mr. Chenault's claims pursuant to a reservation of rights; and thereafter, by letter dated October 15, 2013, a copy of which is attached as Exhibit D, PLIGA advised that under New Jersey law, it

9

US2008 5767830 1

had no responsibility to pay any claim by plaintiff until all other applicable insurance coverage is exhausted.

33.   Defendant Clarendon has not responded to plaintiff's notice of his claims or to his motion to reopen this case.

34.   Defendant Sirius responded to plaintiff's notice of his claims by letter dated February 26, 2014, a copy of which is attached as Exhibit E, that acknowledged its obligation to investigate and in effect to assume the defense of defendants VHCA and Marshall & Moran, subject to a reservation of rights.

35.   By letter dated January 31, 2014, a copy of which is attached as Exhibit F, Zurich responded to plaintiff's claims by wrongfully invoking the limited mold exclusion in its policies to deny that it has any obligation to drop down and provide primary coverage for mold-related injuries and damage caused by water intrusion that resulted in the formation of toxic mold in plaintiff's condominium residence.

36.   Despite the reservations stated in the attached correspondence, the policies of insurance issued by defendants Newark, Clarendon, Sirius and Zurich provide coverage for all the damages alleged herein by plaintiff Chenault; therefore, under applicable New Jersey law, each of those carriers has the obligation to pay an allocable, pro-rata share, of the monetary damages attributable to property damage and bodily injury caused by plaintiff's continuous, injurious exposure to toxic mold during the periods of coverage provided by those policies. After the limits of those policies are exhausted, PLIGA is responsible, up to $300,000 annually, for any remaining damages not paid by the other, defendant carriers.

10

## COUNT I

### (Negligence)

37.     Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-36 of this complaint.

38.     Defendants had and continue to have, a legal duty to plaintiff Chenault, as imposed by applicable law and assumed under VHCA's bylaws and by the contract designating Marshall & Moran as property manager for VHCA, to maintain, repair, and remediate the premises, including building walls, foundation, and adjacent grounds and drainage to prevent water intrusion and resulting mold damage to plaintiff's condominium residence, 9 Victory Court.

39.     Defendants' negligent and unreasonable maintenance, repair and remediation of the walls, foundation, and adjacent grounds and drainage was the cause in fact and proximate cause of water intrusion into plaintiff's condominium residence, leading to formation of significant and dangerous toxic mold in the living areas of 9 Victory Court.

40.     Defendants VHCA and Marshall & Moran negligently failed to exercise reasonable care to maintain the premises in a safe condition, failed to remedy the damage conditions, including toxic mold that existed on the premises, and also failed to warn plaintiff of the dangerous conditions that existed on the premises when they knew of and should have known that the dangerous condition of the premises was not likely to be discovered by plaintiff.

41.     Defendants' negligent acts and omissions caused water intrusion in plaintiff's condominium residence that led to formation of hidden, toxic mold, resulting in plaintiff's serious bodily and mental injury, as well as mental anxiety, as detailed herein.  Further, the toxic

11

mold in plaintiff's condominium residence rendered the property dangerous, uninhabitable and unsalable.

42.    As a result of defendants' unreasonable, negligent acts and omissions, as set forth herein, Mr. Chenault has suffered significant damages, including medical expenses; physical property damages and diminution of value and loss of use of his condominium residence; bodily and mental injury; and mental anguish; and he should be compensated for such loss and damage in an amount to be determined at trial.

## COUNT II

### (Warranty of Quiet Enjoyment)

43.    Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

44.    By failing to maintain, repair and remediate the conditions of the premises that caused ongoing water intrusion and resulted in formation of toxic mold that was unknown to plaintiff Chenault, defendants' actions caused the creation of a nuisance and breached plaintiff's implied right of quiet enjoyment.

45.    As a direct and proximate result of defendants' breach of plaintiff's implied right of quiet enjoyment of his condominium residence, 9 Victory Court, Mr. Chenault has suffered significant damages, including medical expenses; physical property damages and diminution of value and loss of use of his condominium residence; bodily and mental injury; and mental anguish; and he should be compensated for such loss and damage in an amount and manner to be determined at trial.

US2008 5767830 1

## COUNT III

### (Warranty of Habitability)

46.     Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

47.     By failing to repair and maintain the premises in an adequate, safe, and sanitary condition, free from the existence of nuisance and hazards to health caused by the formation of toxic mold, defendants breached their implied warranty of habitability of plaintiff's condominium residence.

48.     As a direct and proximate result of defendants' breach of plaintiff's implied warranty of habitability of his condominium residence, 9 Victory Court, Mr. Chenault has suffered significant damages, including medical expenses; physical property damages and diminution of value and loss of use of his condominium residence; bodily and mental injury; and mental anguish; and he should be compensated for such loss and damage in an amount and manner to be determined at trial.

## COUNT IV

### (Covenant of Good Faith and Fair Dealing)

49.     Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

50.     At various times during the periods alleged here, Mr. Chenault advised defendant VHCA and later defendant Marshall & Moran of water intrusion and subsequently of his discovery in March, 2009 of toxic mold in his condominium residence; however, defendants negligently and recklessly failed to take appropriate, timely action to repair the cause(s) of the

13

water intrusion and to remediate the toxic mold, despite their obligations to do so under applicable law and in accord with the VHCA bylaws.

51.     Defendants acted in bad faith in failing to repair the damages, eliminate the water intrusion, and remediate the toxic mold that formed in plaintiff's condominium residence, 9 Victory Court, thereby breaching their implied covenant of good faith and fair dealing owing to plaintiff Chenault.

52.     As a direct and proximate result of defendants' breach of their implied covenant of good faith and fair dealing, Mr. Chenault has suffered significant damages, including medical expenses; physical property damages and diminution of value and loss of use of his condominium residence; bodily and mental injury; and mental anguish; and he should be compensated for such loss and damage in an amount and manner to be determined at trial.

## COUNT V

### (Declaratory Judgment Regarding Newark Coverage)

53.     Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

54.     The policies of liability insurance Newark issued to VHCA, covering the period from June 1, 1991-June 1, 1994 do not contain any exclusion that would bar coverage for claims for mold-related property damage or bodily injury occurring during the period of time covered by the Newark policies, as shown on Exhibit A.

55.     The policies of liability insurance Newark issued to VHCA do not contain any exclusion that would bar coverage for the claims alleged herein by plaintiff Chenault for property damage and bodily injury resulting from his continuous, but unknown injurious exposure to toxic mold at his condominium residence, 9 Victory Court.

14

56. All conditions precedent to a declaration of rights regarding coverage under the policies of insurance issued by Newark to VHCA have been satisfied.

57. Pursuant to Rule 4:42-3, this court should issue a declaratory judgment ruling that in accord with the terms of the policies listed on Exhibit A, defendant Newark is obligated to pay its allocated share of plaintiff's damages, to be proved at trial, attributed to his continuous injurious exposure to toxic mold and to property damage to his condominium residence, 9 Victory Court.

## COUNT VI

### (Declaratory Judgment Regarding Clarendon Coverage)

58. Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

59. The policy of liability insurance Clarendon issued to VHCA covering the period from June 1, 2000–June 1, 2001, does not contain any exclusion that would bar coverage for claims for mold-related property damage or bodily injury occurring during the period of time covered by the Clarendon policy, as shown on Exhibit A.

60. The policy of liability insurance Clarendon issued to VHCA does not contain any exclusion that would bar coverage for the claims alleged herein by plaintiff Chenault for property damage and bodily injury resulting from his continuous, but unknown injurious exposure to toxic mold at his condominium residence, 9 Victory Court.

61. All conditions precedent to a declaration of rights regarding coverage under the policy of insurance issued by Clarendon to VHCA have been satisfied.

62. Pursuant to Rule 4:42-3, this court should issue a declaratory judgment ruling that in accord with the terms of the policy listed on Exhibit A, defendant Clarendon is obligated to

15

pay its allocated share of plaintiff's damages, to be proved at trial, attributed to his continuous injurious exposure to toxic mold and to property damage to his condominium residence, 9 Victory Court.

## COUNT VII

### (Declaratory Judgment Regarding Sirius Coverage)

63.     Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

64.     The policies of liability insurance Sirius issued to VHCA covering the period from June 1, 2001–June 1, 2005, do not contain any exclusion that would bar coverage for claims for mold-related property damage or bodily injury occurring during the period of time covered by the Sirius policies, as shown on Exhibit A.

65.     The policies of liability insurance Sirius issued to VHCA, including three policies naming Marshall & Moran as an additional insured, do not contain any exclusion that would bar coverage for the claims alleged herein by plaintiff Chenault for property damage and bodily injury resulting from his continuous, but unknown injurious exposure to toxic mold at his condominium residence, 9 Victory Court.

66.     The last policy issued to VHCA by Sirius contains a clause, which Sirius has wrongfully invoked in the reservation of rights letter attached hereto as Exhibit E, as a $50,000 limitation on coverage for plaintiff's mold-related bodily injury and damage; however, such clauses are not enforceable under New Jersey law to bar or limit an insurance carrier's obligation to pay its full, allocable pro rata share of liability for continuous, injurious exposure to and damage caused by toxic mold.

- 16 -

67.     All conditions precedent to a declaration of rights regarding coverage under the policies of insurance issued by Sirius to VHCA, including the policies naming Marshall & Moran as additional insured, have been satisfied.

68.     Pursuant to Rule 4:42-3, this court should issue a declaratory judgment ruling that in accord with the terms of the policies listed on Exhibit A, defendant Sirius is obligated to pay its allocated share of plaintiff's damages, to be proved at trial, attributed to his continuous injurious exposure to toxic mold and to property damage to his condominium residence, 9 Victory Court.

## COUNT VIII

### (Declaratory Judgment Regarding Zurich Coverage)

69.     Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

70.     The policy of liability insurance Zurich issued to VHCA, naming Marshall & Moran as additional insured, that covers the period from June 1, 2005–June 1, 2006, contains an exclusion for mold that includes a clause known as an "anti-concurrent cause" clause that authorities have recognized bars claims for mold-related property damage or bodily injury, regardless of cause; however, the successor policies issued by Zurich covering the period from June 1, 2006-June 1, 2010, as shown on Exhibit A, do not contain mold exclusions that would bar of limit coverage for mold-related property damage or bodily injury when the efficient proximate cause of the damage or injury is water intrusion or another non-excluded clause.

71.     The policies of liability insurance Zurich issued to VHCA covering the period from June 1, 2006-June 1, 2010, also name Marshall & Moran as an additional insured and do not contain any exclusion that would bar coverage for the claims alleged herein by plaintiff

17

US2008 5767830 1

Chenault for property damage and bodily injury resulting from plaintiff Chenault's continuous, but unknown injurious exposure to toxic mold at his condominium residence, 9 Victory Court.

72.    The policies of liability insurance that Zurich issued to VHCA, naming Marshall & Moran as additional insured, contain a clause, generally known as a "drop down" clause, providing that Zurich's policies provide liability coverage to VHCA and also to Marshall & Moran on a "primary" basis where, as here, the underlying policies issued by QBE Insurance Co. to VHCA do not provide coverage for plaintiff Chenault's claims.

73.    All conditions precedent to a declaration of rights regarding coverage under the policies of insurance issued by Zurich to VHCA, naming Marshall & Moran as additional insured, have been satisfied.

74.    Pursuant to Rule 4:42-3, this court should issue a declaratory judgment ruling that in accord with the terms of the policies listed on Exhibit A, defendant Zurich is obligated to pay its allocated share of plaintiff's damages, to be proved at trial, attributed to his continuous injurious exposure to toxic mold and to property damage to his condominium residence, 9 Victory Court.

## COUNT IX

### (Declaratory Judgment Regarding PLIGA's Potential Obligations)

75.    Plaintiff Chenault incorporates by reference, as if fully set forth herein, the foregoing paragraphs 1-42 of this complaint.

76.    PLIGA is conditionally responsible to provide up to $300,000 per year to compensate plaintiff for damages that would have been paid by insolvent insurance carriers who issued policies to VHCA during the period from June 1, 1994-June 1, 2000. PLIGA's obligation to contribute to such damages requires the limits of all other policies providing coverage for

18

plaintiff Chenault's continuous injurious exposure to toxic mold and to property damage at his condominium residence to be exhausted before PLIGA is required to contribute to plaintiff's damages.

77.    PLIGA has acknowledged plaintiff's potential, conditional entitlement to recover damages from PLIGA, should the limits of the other policies issued by the insurer defendants be exhausted and are not sufficient to pay plaintiff's damages.  The policies of liability insurance for which PLIGA is potentially responsible that were issued to VHCA by insolvent carriers covering the period from June 1, 1994-June 1, 2000, do not contain any exclusion that would bar coverage for claims for mold-related property damage or bodily injury occurring during the period of time covered by those policies, as shown on Exhibit A.

78.    The policies of liability insurance for which PLIGA is potentially responsible that were issued to VHCA by insolvent carriers do not contain any exclusion that would bar coverage for the claims alleged herein by plaintiff Chenault for property damage and bodily injury resulting from plaintiff Chenault's continuous, but unknown injurious exposure to toxic mold at his condominium residence, 9 Victory Court.

79.    All conditions precedent to a declaration of rights regarding PLIGA's potential obligation to pay damages to plaintiff that are not paid by the limits of policies issued by the other insurance defendants named herein have been satisfied.

80.    Pursuant to Rule 4:42-3, this court should issue a declaratory judgment ruling that in accord with the terms of the policies listed on Exhibit A by insolvent carriers, LMI and/or Highlands Insurance Company and after exhaustion of the limits of the other policies, defendant PLIGA is conditionally obligated to pay its allocated share of plaintiff's damages, up to $300,000 per policy period, in an amount to be proved at trial, attributed to plaintiff's continuous

19

US2008 5767830 1

injurious exposure to toxic mold and to property damage to his condominium residence, 9

Victory Court.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, Larry Chenault, respectfully requests the following relief:

1.     That the Court enter a declaratory judgment finding that in accord with the terms

and conditions of the insurance policies listed on Exhibit A, those policies provide applicable

coverage to VHCA, as named insured for monetary damages attributable to continuous property

damage and bodily injury caused by plaintiff's injurious exposure to toxic mold at his

condominium residence commencing in 1991 and continuing through June, 2010 and

accordingly that plaintiff is entitled to pursue his claims against defendant VHCA for Damages

in excess of $110,000.

2.     That the Court enter a declaratory judgment finding that in accord with the terms

and conditions of the insurance policies listed on Exhibit A that were issued by Sirius and Zurich

covering the period from November 6, 2003 – June 1, 2010, those policies provide applicable

coverage to Marshall & Moran, as additional insured, for monetary damages attributable to

continuous property damage and bodily injury caused by plaintiff's injurious exposure to toxic

mold at his condominium residence during the period that Marshall & Moran served as property

manager for VHCA and accordingly that plaintiff is entitled to pursue his claims against

defendant Marshall & Moran for Damages in excess of $110,000.

3.     That the Court enter a declaratory judgment that defendants Newark, Clarendon,

Sirius and Zurich are obligated to pay their allocable, pro rata share of monetary damages

attributable to continuous property damage and bodily injury caused by plaintiff's continuous,

20

US2008 5767830 1

injurious exposure to toxic mold at his condominium residence commencing in 1991 and continuing through June, 2010, to the extent that those damages exceed $110,000.

4.    That the Court enter a declaratory judgment that defendant PLIGA is conditionally liable to pay up to $300,000 in damages to plaintiff for each year of coverage provided by insolvent carriers listed on Exhibit A, to the extent that the policies of defendants Newark, Clarendon, Sirius and Zurich do not fully cover all the monetary damages attributable to continuous property damage and bodily injury caused by plaintiff's injurious exposure to toxic mold at his condominium residence commencing in 1991 and continuing through June, 2010, to the extent that those damages exceed $110,000.

5.    That the Court enter judgment against defendants VHCA and Marshall & Moran, jointly and severally for compensatory damages, interest, costs of suit, to the extent that those damages, interest and costs of suit are covered by applicable insurance and exceed $110,000.

6.    That the Court award such other and further relief as the Court deems equitable and just.

Dated: July 3, 2014                    KILPATRICK TOWNSEND & STOCKTON, LLP

                                       By: _____
                                       Carl A. Salisbury (013991992)
                                       Kilpatrick Townsend & Stockton LLP
                                       The Grace Building
                                       1114 Avenue of the Americas
                                       New York, NY  10036-7703
                                       Attorneys for Plaintiff Larry Chenault

21

## DEMAND FOR INSURANCE INFORMATION

Pursuant to Rule 4:10-2(b), plaintiff hereby demands that the defendants provide plaintiff with a copy of all insurance policies referenced on Exhibit A hereto, to the extent the full and correct copies of such policies have not previously been made available to plaintiff and the insurance archeologist retained in accordance with the aforementioned May 10, 2012 settlement agreement.

## DEMAND FOR JURY

Plaintiff Chenault hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of Rule 4:25-4, the Court is advised that Carl A. Salisbury, Esq. is hereby designated a trial counsel on behalf of plaintiff Chenault.

## RULE 4:5-1 CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that this matter in controversy is not the subject to any other action pending in any court, is not the subject of a pending arbitration proceeding, and none is contemplated.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Carl A. Salisbury (013991992)
Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703

22

US2008 5767830 1

Exhibit A

*waiver?*

CONFIDENTIAL PRIVILEGED SETTLEMENT COMMUNICATION,
WITHOUT PREJUDICE

| VHCA Policy Chart for Larry Chenault Claims | | | | | |
|---|---|---|---|---|---|
| Period | Carrier | Policy No. | Deductible/ Retention | Primary Coverage | Umbrella Coverage |
| 6/1/91-6/1/92 | Newark Ins. Co. (Royal) | NSP 210552 0091 | 0 | $1,000,000 | |
| 6/1/92-6/1/93 | Newark Ins. Co. (Royal) | NSP 210552 0092 | 0 | $1,000,000 | |
| 6/1/93-6/1/94 | Newark Ins. Co. (Royal) | NSP 210552 0093 | 0 | $1,000,000 | |
| | | | | | |
| 6/1/94-6/1/95 | LMI Insurance* | CM2903195 | 0 | $300,000 | |
| 6/1/95-6/1/96 | LMI Insurance* | CM2903195 | 0 | $300,000 | |
| 6/1/96-6/1/97 | LMI Insurance* & Highlands Ins. in receivership | CM2903195 | 0 | $300,000 | |
| 6/1/97-6/1/98 | LMI Insurance* & Highlands Ins. in receivership | CM2906813 | 0 | $300,000 | |
| 6/1/98-6/1/99 | LMI Insurance* & Highlands Ins. in receivership | CM2906813 | 0 | $300,000 | |
| 6/1/99-6/1/00 | LMI Insurance* & Highlands Ins. in receivership | CPA9045896 00 | 0 | $300,000 | |
| | | | | | |
| 6/1/00-6/1/01 | Clarendon America | CMP 06779 | 0 | $1,000,000 | |
| | | | | | |
| 6/1/01-6/1/02 | Imperium Insurance Co. f/k/a Sirius America | CMP 06779 | 0 | $1,000,000 | |
| 6/1/02-6/1/03 | Imperium Insurance Co. f/k/a Sirius America | M 06779 | 0 | $1,000,000 | |
| 6/1/03-6/1/04 | Imperium Insurance Co. f/k/a Sirius America | CMP 06779 | 0 | $1,000,000 | |

#5374543

CONFIDENTIAL PRIVILEGED SETTLEMENT COMMUNICATION,
WITHOUT PREJUDICE

| Period | Carrier | Policy No. | Deductible/ Retention | Primary Coverage | Umbrella Coverage |
|---|---|---|---|---|---|
| 6/1/04-6/1/05 | Imperium Insurance Co. f/k/a Sirius America** | CMP 06779 | 0 | $50,000 | |
| 6/1/05-6/1/09 | QBE Ins. Corp.*** | Various | 0 | *** | |
| 6/1/05-6/1/07 | American Guarantee & Liability Insurance Co.*** | AUC2972964-00 and 04 | 0 | *** | |
| 6/1/07-6/1/08 | American Guarantee & Liability Insurance Co. | AUC 2972964 05-1507459-02 | $10,000 | | $15,000,000 |
| 6/1/08-6/1/09 | American Guarantee & Liability Insurance Co. | AUC 2972964 06-1507459-03 | $10,000 | | $15,000,000 |
| 6/1/09-6/1/10 | American Guarantee & Liability Insurance Co. | AUC 2972964 07-1507459-04 | $10,000 | | $15,000,000 |
| *LMI insolvency: Maximum recovery shown as PLIGA (NJ Property & Liability Guaranty Ass'n) annual limit | **Policy contains $50,000 mold sublimit | ***Limited or no coverage-- policies contained mold exclusions with anti- concurrent cause clauses | | | |
| | | | | Total Primary Coverage | Total Umbrella Coverage |
| | | | | $8,850,000 | $45,000,000 |

#5374543

Exhibit B

 **SOCIAL SECURITY ADMINISTRATION**
Refer To:

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
1100 Raymond Blvd
3rd Floor
Newark, NJ 07102

Date: December 2, 2010

Larry Chenault
9 Victory Court
Victory Gardens, NJ 07801

## Notice of Decision — Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

Appeals Council
Office of Disability Adjudication and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255

**Time Limit To File An Appeal**

You must file your written appeal within 60 days of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76 (03-2010)

See Next Page

Larry Chenault                                              Page 2 of 3

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence with your appeal. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

## How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

## When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

## If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

Form HA-L76 (03-2010)

See Next Page

Dec 10 10 02:03p    Larry Chenault                    19739895533                p.3

Larry Chenault                    )                           Page 3 of 3

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (866)964-0992. Its address is:

                        Social Security
                        2200 State Rt 10
                        Suite 200
                        Parsippany, NJ 07054-5304

                                Richard L. De Steno
                                Administrative Law Judge

Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale

cc:     Erica J. Mandell, Esq.
        46 Bayard St. Ste. 306
        New Brunswick, NJ 08901

                                                        Form HA-L76 (03-2010)

Exhibit C

# NJPLIGA New Jersey Property-Liability Insurance Guaranty Association

| | |
|---|---|
| New Jersey Surplus Lines Insurance Guaranty Fund | 222 Mount Airy Road ❖ Basking Ridge, New Jersey 07920 |
| Unsatisfied Claim and Judgment Fund | Tel: (908) 382-7100 ❖ Fax: (908) 382-7153 |
| Workers' Compensation Security Fund | www.njguaranty.org |

September 3, 2013

Certified Mail, Return Receipt Requested

Edmund Kneisel, Esq
Kilpatrick Townsend
1100 Peachtree St., NE, Suite 2800
Atlanta, GA 30309-4528

RE: LMI Insurance Company Insurance Company in Liquidation
    File Number: LMI-13-00001
    Insured: Victory Highlands Condominium Association
    Claimant: Larry Chenault
    Policy Nos.: CM 2903195, period 6/1/94-97
              CM 2906815, period 6/1/97-99
              CPS 9045869600, period 6/1/99-00

Dear Mr. Kneisel:

The New Jersey Property-Liability Insurance Guaranty Association ("Association") is authorized to administer the above referenced claim in accordance with the Association's statutory obligations. Those obligations are set forth in the New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 et seq. ('Act").

The Association has confirmed that timely written notice of Proof of Claim filing deadline was not provided, therefore, the Unusual Hardship request is accepted, and your claim has been submitted to the Association for consideration. The Association's responsibility is limited to the handling of "covered claims" as defined by the Act. The Association was created by New Jersey statute to provide a mechanism for payment of covered claims because of the insolvency of certain types of insurers. We refer you to the Act's statute 17:30A-5:

    17:30A-5. Definitions
D.    "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State. "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any such amount, asserted against a person insured under a policy for issued by an insurer which has become an insolvent insurer, insurance pool, or underwriting association, would be a "covered claim," may filed directly with the receiver of the insolvent insurer, but in no event may such claim be asserted in any legal action against the insured of such insolvent insurer."

# New Jersey Property-Liability Insurance Guaranty Association

New Jersey Surplus Lines Insurance Guaranty Fund
Unsatisfied Claim and Judgment Fund
Workers' Compensation Security Fund

222 Mount Airy Road ❖ Basking Ridge, New Jersey 07920
Tel: (908) 382-7100 ❖ Fax: (908) 382-7153
www.njguaranty.org

Edmund Kneisel, Esq
Page 2
September 3, 2013

After reviewing the documentation submitted to date for the above-referenced claim, the Association has not yet been able to determine if this is a "covered claim". Therefore, please be advised that we are continuing our investigation of this claim under a full reservation of rights, pending our complete review of all relevant documentation, including, but not limited to, file materials, policies, contracts, and statutory provisions that may apply.

The Association reserves all of its rights under its governing statute, as well as any applicable insurance contracts issued by LMI to the insured.

If you have any questions concerning this matter, please do not hesitate to contact me. Thank you for your courtesies in this regard.

Very truly yours,

Robert McKeown
Senior Claim Examiner
908-382-7308
rmckeown@njguaranty.org

Exhibit D

# NJPLIGA New Jersey Property-Liability Insurance Guaranty Association

New Jersey Surplus Lines Insurance Guaranty Fund          222 Mount Airy Road ❖ Basking Ridge, New Jersey 07920
Unsatisfied Claim and Judgment Fund                                    Tel: (908) 382-7100 ❖ Fax: (908) 382-7153
Workers' Compensation Security Fund                                                                    www.njguaranty.org

October 15, 2013

Edmund Kneisel, Esq.
Kilpatrick Townsend
Suite 2800
1100 Peachtree St., NE
Atlanta, GA 30309-4528

Certified & Regular Mail

> RE:   LMI Insurance Company in Liquidation
>        Claim No.: LMI-13-00001
>        Date of Loss: 6/1/94
>        Policy No.: CM290319530195
>        Claimant: Larry Chenault
>        Insured: Victory Highlands Condominium Association

Dear Mr. Kneisel:

LMI Insurance Company Insolvent Company Name ("LMI") was declared insolvent on May 22, 2000. The New Jersey Property-Liability Insurance Guaranty Association ("Guaranty Association") is authorized to administer {Insolvency Possessive Name} claims in accordance with the Guaranty Association's statutory obligations. Those obligations are set forth in the New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 et seq. ("Guaranty Association Act").

Your claim has been submitted to the Guaranty Association for consideration. The Guaranty Association's responsibility is limited to the handling of "covered claims" as defined by the Guaranty Association Act which mandates that all solvent coverage for the claim be exhausted prior to the Guaranty Association having any obligation to provide statutory benefits. N.J.S.A. 17:30A-12(b) provides, in pertinent part, as follows:

> Any person having a claim, except for a claim for coverage for personal injury protection benefits…under an insurance policy other than a policy of an insolvent insurer shall be required to exhaust first his right under that other policy.

For purposes of this subsection b., a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include without limitation, general liability, accident and health insurance, workers' compensation, health benefits plan coverage, primary and excess coverage, if applicable, and all other private, group or governmental

**NJPLIGA New Jersey Property-Liability Insurance Guaranty Association**

New Jersey Surplus Lines Insurance Guaranty Fund
Unsatisfied Claim and Judgment Fund
Workers' Compensation Security Fund

222 Mount Airy Road ✦ Basking Ridge, New Jersey 07920
Tel: (908) 382-7100 ✦ Fax: (908) 382-7153
www.njguaranty.org

coverages except coverage for personal injury protection benefits. [Emphasis added.]

Pursuant to N.J.S.A. 17:30A-5, "exhaust" is defined, in pertinent part, as follows:

'Exhaust' means with respect to other insurance, the application of a credit for the maximum limit under the policy, except that in any case in which continuous indivisible injury or property damage occurs over a period of years as a result of exposure to injurious conditions, exhaustion shall be deemed to have occurred only after a credit for the maximum limits under all other coverages, primary and excess, if applicable, issued in all other years has been applied. With respect to health insurance and workers' compensation insurance, 'exhaust' means the

application of a credit for the amount of recovery under the insurance policy. The amount of a covered claim payable by the association shall be reduced by the amount of any applicable credits. [Emphasis added.]

Based upon the foregoing, you are required to submit your claim to any other solvent carrier which may provide you coverage for your claim before seeking coverage under the (Insolvency short name) policy. Any amount recovered by you through coverage provided by a solvent carrier will reduce, by the same amount, any statutory benefit the Guaranty Association might otherwise be obligated to pay.

In addition to the defenses specifically set forth in this letter, the Guaranty Association reserves all of its rights and defenses under the Guaranty Association Act, as well as any applicable insurance contracts issued by (Insolvency short name) to the insured.

If you have any questions concerning this matter, please do not hesitate to contact me.

Very truly yours,

Robert A. McKeown
Senior Examiner
908-382-7308

cc-Victory Highlands Condominium Association
    84 Victor Court
    Victory Gardens, NJ 07801

**EXHIBIT E**

100% Recycled   30% PCW





February 26, 2014

Victory Highlands Condominium Association, Inc.
c/o IMPAC Property Management
440 Beckerville Road
Manchester, NJ 08759

<table>
<tr><td>Re:</td><td>Insured:</td><td>Victory Highlands Condominium Association, Inc.</td></tr>
<tr><td></td><td>Claim No.:</td><td>GGDI13080002</td></tr>
<tr><td></td><td>Insurer:</td><td>Sirius America Insurance Company</td></tr>
<tr><td></td><td>Policy No.:</td><td>CMP06779</td></tr>
<tr><td></td><td>Policy Periods:</td><td>6/01/01 to 6/01/02, 6/01/02 to 6/01/03,<br>6/01/03 to 6/01/04, 6/01/04 to 6/01/05</td></tr>
<tr><td></td><td>Claimant:</td><td>Larry Chenault</td></tr>
<tr><td></td><td>Date of Loss:</td><td>Various</td></tr>
</table>

Dear Insured:

　　　North American Risk Services is the third-party administrator for Sirius America Insurance Company ("Sirius") which provides general liability coverage to Victory Highlands Condominium Association, Inc. ("Victory") under the above-captioned commercial package policy with annual limits of $1 million per occurrence and $2 million aggregate.

　　　We are writing to provide you with Sirius' coverage position with respect to the above-captioned claim in which the claimant Larry Chenault claims to have sustained bodily injury as a result of exposure to toxic mold at the insured premises.  Please be advised that Sirius will proceed with the handling and investigation of this matter under a complete reservation of rights, as set forth below.  Sirius reserves the right to disclaim coverage and to withdraw from the handling of this matter should it determine that no coverage is provided for this claim.  Please be advised that Sirius expressly disclaims any obligation to reimburse the amounts the insureds have agreed to pay to the claimant without Sirius' consent.

　　　In April, 2010, claimant Chenault filed suit in New Jersey Superior Court, Essex County against Victory and its property manager, Marshall and Moran, LLC ("Marshall"), alleging that he had sustained injury while a resident and unit owner at the Victory condominium in Morris County, New Jersey.  The suit alleged that, in or about March, 2009, the premises was inspected

1

and it was found to contain toxic mold resulting from a leak from an exterior wall and/or the roof. The suit asserted that the plaintiff Chenault sustained bodily injury as a result of exposure to the toxic mold. In addition, the complaint asserted that plaintiff's personal and real property were damaged by mold. The suit sought unspecified amounts of compensatory damages.

In May, 2012, Victory and Marshall entered into a settlement agreement with the claimant in which Victory agreed to pay claimant $85,000 and Marshall agreed to pay claimant $25,000 in exchange for a full release of all claims against them arising out of Chenault's alleged exposure to toxic mold at the premises.

In the settlement, however, the claimant Chenault reserved all rights against any and all insurance coverage that might be available to Victory and Marshall and reserved the right to reinstitute his claim against Victory and Marshall for the sole purpose of seeking a recovery under the insurance policies for the extent his alleged damages exceeded the $110,000 he had been paid by Victory and Marshall. Chenault agreed to indemnify Victory and Marshall against any subrogation claims insurers might make against them in the event Chenault pursue claims against the insurers.

This matter was recently tendered to Sirius for the first time by counsel for Chenault asserting a claim based on alleged exposure to toxic mold during the period of the Sirius policies referenced above. Counsel for Chenault also forwarded a copy of a decision on the claimant's request for Social Security disability benefits rendered on December 2, 2010, by the Social Security Administration–Office of Disability Adjudication and Review. In the decision, it is noted that Chenault claims to have been exposed to toxic mold during his period of residence at the Victory condominium between 1991 and 2009. The decision concluded, however, that Chenault became disabled under the provisions of the Social Security Act only as of November 1, 2008.

According to the materials submitted to Sirius, the claim was initially submitted by Victory to its insurers on the risk in and around the time the mold was discovered at the premises, which is several years after the Sirius coverage expired. It appears that some or all of these insurers have denied coverage for the claim based on mold exclusions.

Please refer to the General Liability Form (form MCL 010 01 95) of the Sirius policy, which provides in relevant part as follows:

## PART II A • MAIN LIABILITY COVERAGE

## COVERAGE E – LIABILITY TO OTHERS

A.  *We* pay for the benefit of *insureds*, up to the applicable limit(s) of liability (See Part II D) shown in the Declarations, those sums that *insureds* become leally liable to pay as damages because of *bodily injury* or *property damage* insured here.

2

Such *bodily injury* or *property damage* must:

- Occur during the policy term, and

- Be caused by an *occurrence* that takes place within the applicable coverage territory: See General Condition 6. (Pg. 11)

\*      \*      \*

**B.**     *We* have no obligation to pay any damages not covered here or in *excess* of our limits of liability (See Part II D) for any covered damages.

\*      \*      \*

## PART II B ● SUPPLEMENTAL COVERAGES

\*      \*      \*

**1.     DEFENSE COVERAGE**

With counsel of *our* choice, *we* defend suits (civil proceedings) against *insureds* seeking damages covered by this insurance. *We* have no duty to investigate any claim, defend or provide for a defense for any *insured*:

- In connection with either suits seeking damages not covered here or allegations within a suit which are not covered here; or

- When the applicable limit of liability is used up in payment of judgments or settlements.

*We* may investigate and settle any claim or suit as *we* deem such to be reasonable.

\*      \*      \*

## PART II C ● LIABILITY NOT INSURED

**We do not provide insurance for any sort of costs, damages, expenses, or liability directly or indirectly, wholly or partially, aggravated by, caused by, or resulting from any of the following, even if an *occurrence* otherwise covered contributes**

3

to such concurrently or any sequence – except to the extent otherwise specifically described and provided for in this policy.

\*   \*   \*

8.   **POLLUTION / ENVIRONMENTAL DAMAGE EXCLUSION**

A.   *We* do not insure *bodily injury* or *property damage* arising out of the actual, alleged, or threatened discharge, dispersal, emission, escape, flowing, leakage, migration, release, or seepage of *pollutants* or other similar forms of environmental damage, regardless of where or how such may take place.

\*   \*   \*

9.   **PREMISES / OTHER PROPERTY ADDITIONAL EXCLUSIONS**

*We* do not insure *property damage* to any of the following premises or property:

\*   \*   \*

B.   Premises *you* have abandoned, sold, or transferred to others, if the damage arises out of any part of such premises.

This does not apply to premises that are *your work* and have been neither occupied by *you* nor rented or held for rental by *you* to others.

C.   Property occupied or owned by, or rented to, *you*: but see Supplemental Coverage 6. (Pg. 3)

\*   \*   \*

**PART II D ● SPECIAL LIABLITY CONDITIONS**

1.   **DUTIES OF *INSUREDS* – WHAT TO DO IN CASE OF CLAIM, INJURY, OCCURRENCE, OR SUIT**

**You, other insureds, and other coverage beneficiaries must do all of the following things:**

4

A.  Immediately notify *us* of all relevant circumstances relating to a claim or any incident which may result in a claim, with all necessary information.  For example: who *you* are, the time, place, and circumstances of the injury or *occurrence*; the names and addresses of injured persons and witnesses.

B.  Immediately send *us* all bills, documents, notices, papers, or summonses related to any claim or suit brought against any *insured* or to any medical expense claims.

C.  Cooperate with us in matters relevant to the claim or suit.  Assist *us* in: conducting suits, including by attending hearings and trials and giving evidence; enforcing any *insured's* rights of contribution or indemnity against others; investigating *occurrences*; making settlements; obtaining records (or other information) or the attendance of witnesses.

D.  Refrain from voluntarily making payments, assuming obligations, or incurring defense, investigative, or any other expenses – unless with *our* specific written authorization to do so (otherwise such undertakings will be at the *insured's* own expense and *we* will not pay for them).  This does not apply to first aid expense coverage.

Failure to comply with these (or other conditions) can alter or void *our* obligations here.

\*       \*       \*

## PART II E • GLOSSARY

**The following words are defined for the purposes of this Part:**

\*       \*       \*

*Bodily Injury*

*Bodily injury* means bodily harm, sickness or disease sustained by any person including death at any time resulting from such, caused by a covered *occurrence*.

5

\*     \*     \*

### Occurrence

*Occurrence* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

### Pollutants

*Pollutants* are any gaseous, liquid, solid, or thermal contaminant or irritant, including acids, alkalis, chemicals, fumes, smoke, soot, vapors, and waste (including materials to be reclaimed, reconditioned, or recycled).

\*     \*     \*

### Property Damage

*Property damage* means the following, caused by a covered occurrence:

- Direct or physical injury to tangible property, including loss of use of such property (the loss of sue is deemed to occur at the time of such direct physical injury).

- Loss of use of tangible property that is not physically injured: all such loss of use is deemed to occur at the time of the occurrence causing the loss.

Please refer to the endorsement attached to the policy for the period 6/01/04 to 6/01/05 entitled, "Fungi / Mold Limitations – Liability (form MCL8830802), which establishes a $50,000 general aggregate/total limit of liability for claims involving mold damage and provides as follows:

### 1.   *FUNGI / MOLD SUPPLEMENTAL COVERAGE*

#### A.   Coverage

*We* pay for the benefit of *insureds*, up to the limit of liability shown in the Schedule of this endorsement, those sums that *insureds* become legally liable to pay as damages because of *bodily injury, property damage, advertising injury* or *personal injury*

resulting from or caused by the actual, alleged, or threatened absorption of, contact with, existence of, exposure to, inhalation of, ingestion of, or presence of any *fungi*.

\*     \*     \*

2.     **ADDITIONAL EXCLUSION – *FUNGI* / MOLD**

Part II C is extended to include the following:

A.     Except as provided in *Fungi* / Mold Supplemental Coverage (Item 1 above), *we* do not cover *bodily injury, property damage, advertising injury, personal injury,* or medical payments resulting from or caused by the actual, alleged, or threatened absorption of, contact with, existence of, exposure to, inhalation of, ingestion of, or presence of any *fungi*.

\*     \*     \*

3.     **ADDITIONAL DEFINITIONS**

The following special definitions apply:

*Fungi* means any type of form of fungus, mold, mildew, spores, algae, smut, protists, rusts or *rot and decay organisms*, and any similar or related organisms and any mycotoxin, substance, compounds, chemicals, mist or vapor produced by any *fungi* in any form, or any byproducts or waste produced by *fungi*, but does not include any *fungi* intended to be edible.

*Rot and decay organisms* means any living organism that causes decomposition of physical property.

Please also refer to the endorsement to the policy entitled, "Two or More Policies Issued by Us Condition – Liability" (form MCL1901294), which provides as follows:

**Part II D • Special Liability Conditions is amended to include the following:**

7

If this policy and any other policy or coverage form issued to *you* by *us*, or by any company affiliated with *us*, apply to the same *occurrence*, accident or injury, *our* maximum limit of liability under all of the policies and coverage forms shall not exceed the highest applicable limit of liability provided under any one policy or coverage form.  In no event will any limit of liability of this policy be excess over or added to the limit of any other such policy or coverage form.

This Condition does not apply to any policy or coverage form issued by *us*, or by any company affiliated with *us*, as a catastrophe / excess liability policy and which specifically applies as excess insurance over this policy.

Although Victory and Marshall were sued in 2010 and entered into a settlement agreement with the claimant in 2012, Sirius was not notified of this claim until recently. Sirius was not consulted regarding the settlement and its permission was not sought by the insureds prior to entering into the agreement.  Sirius thus disclaims any obligation to reimburse the sums the insureds agreed to pay the claimant in the settlement agreement.  In addition, an issue is raised as to whether the delayed notice and the exclusion of Sirius from the handling of the action and the settlement constitute material breaches of the above-referenced policy conditions by Victory and Marshall such that coverage under the Sirius policy has been fully abrogated. Sirius therefore reserves the right to deny coverage for this claim on this ground.

Coverage under the Sirius policy is in any event limited to "bodily injury" and "property damage" caused by an "occurrence" during the period of the Sirius coverage.  While the Sirius coverage was in effect for the period 6/01/01 to 6/01/05, the alleged toxic mold condition at the insured premises was not discovered until March, 2009.  Furthermore, the Social Security Administration decision indicates that the claimant only became disabled beginning in November, 2008, long after the Sirius policy expired.  At the present time, therefore, there is no evidence that the claimant Chenault sustained any potentially covered damages during the period of the Sirius coverage.

Please also be advised that no coverage is provided to the extent the claim falls within the scope of the above-referenced policy exclusions.  Please be further advised that, to the extent any injury caused by mold that would otherwise be covered took place during the period of the 6/01/04 to 6/01/05 policy, the coverage is limited to a total of $50,000 pursuant to the Fungi/Mold Limitations endorsement quoted above.

Finally, please note that, pursuant to the above-referenced endorsement regarding two or more policies issued by Sirius, regardless of the number of Sirius policies that may provide coverage for the claim, the total applicable coverage for the claim is a maximum of one policy limit.

Sirius accordingly will proceed with the handling and investigation of this claim subject to a complete reservation of rights. Sirius reserves the right to disclaim coverage and to withdraw from the handling of this matter should it determine that no coverage is provided for the claim.

By copy of this letter to counsel for the claimant Chenault, we request that we be provided with all information regarding the nature and timing of the injuries allegedly sustained by Chenault as well as all other relevant information regarding this claim for review and consideration by Sirius.

Nothing in this letter should be construed as a waiver by Sirius of any provision of the policy or of any other coverage defenses that are or may become available. Citation to certain provisions of the policy in this letter does not preclude Sirius' reliance upon other provisions of the policy in the future. Sirius reserves all of its rights in this matter.

If you have any questions regarding the contents of this letter, or if you have any additional information regarding the coverage which you believe should be considered by Sirius, please contact the undersigned.

Very truly yours,


Jackie Kourmoulis
Claims Adjuster
North American Risk Services Inc.
P.O. Box 166002
Altamonte Springs, FL 32701
Phone: (321) 441-1353
Toll Free: (800) 315-6090 x 1353
Fax: (866) 261-8507


cc:     Commerce National Insurance
        13 Emery Avenue
        Randolph, NJ 07869

        Marshall and Moran, LLC
        One Madison Avenue
        Morristown, NJ 07960

        Edmund M. Kneisel, Esq.
        Kilpatrick Townsend
        1100 Peachtree Street, NE, Suite 2800

Atlanta, GA 30309-4528

Exhibit F

(Page 1 of 3)



ZURICH

January 31, 2014

Victory Highlands Condominium Association
Rebecca Chambers, Site Manager
440 Beckerville Rd.
Manchester Township, NJ 08759

Re: Larry Chenault v.
  Victory Highlands Condominium Association, et al
  Essex County Case No.: 3078-10

Zurich Claim:   9260128007
Zurich Insured:  PPP I – Victory Highlands Condominium Association
Plaintiff:    Larry Chenault
Policy Information: AUC 2972964
Effective Dates:  6/1/05-6/1/11

Norma Villegas
Claims Specialist III
Construction Defect
Direct Phone 847-969-4057
Norma.villegas@zurichna.com

Zurich
P.O. Box 66965
Chicago, IL 60666-0965

866-257-1205 (fax)
www.zurichna.com

Dear Ms. Chambers:

American Guarantee and Liability Insurance Company (hereinafter Zurich) has been investigating this claim. Please allow this letter to serve as our coverage letter in response to the claim submitted under your Commercial Umbrella Liability Policy AUC 2972964. At this time based on the information received to date, it appears that there is no coverage for the above loss as outlined below as it pertains to the CUL coverage under policy AUC 2972964. This coverage decision is based on information to date and is subject to change should additional information be received.

Zurich understands the facts of the case to be as follows:

Plaintiff was a unit owner in the building located at 9 Victory Ct. Dover, NJ. Plaintiff filed suit against Victory Highlands Condominium Association and others alleging Bodily Injury due to mold exposure beginning in 1991. Plaintiff had an expert inspect the premises back in March of 2009 that revealed significant toxic mold levels throughout the property The Zurich policies contain an endorsement that excludes coverage for any allegations due to Fungus. Therefore, Zurich cannot provide coverage for this loss.

A claim was submitted under your Commercial Umbrella Liability Policy with Zurich policy number AUC 2972964 with effective dates of 6/1/05-6/1/11. The 6/1/05-6/1/06, 6/1/07-6/1/08, 6/1/08-6/1/09, 6/1/09-6/1/10 and 6/1/11 policy periods contain limits of liability of $15,000,000 for each loss and $15,000,000 for the entire policy.  The 6/1/06-6/1/07 policy period contains limits of liability of $25,000,000 for each loss and $25,000,000 for the entire policy.

Any coverage provided by these policies is subject to the exhaustion of all available underlying insurance limits and is subject to the same exclusions and conditions as provided by the

(Page 2 of 3)

Page 2

underlying policies in effect at the time of this insurance. Zurich policies will follow form to the underlying coverage, and we reserve all rights and potential coverage defenses we may have available to us based on the terms, conditions, provisions, and exclusions within these policies.

Zurich understands that QBE has denied coverage to Victory Highlands Condominium Association based on a fungus exclusion in their policy.

The Zurich policies contain the following insuring agreement:

Based on the information to date Coverage A of the insuring agreement would not apply to this loss.

SECTION I. COVERAGE

B.      Coverage B – Umbrella Liability Insurance

        Under Coverage B, we will pay on behalf of the insured, sums as damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, or personal and advertising injury covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specified by Item 5. of the Declarations or the amount payable by other insurance, whichever is greater.

        Coverage B will not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.

The amount we will pay for damages under or Coverage B is limited as described in SECTION II. LIMITS OF INSURANCE.

We have no obligation under Coverage B with respect to any claim or suit settled without our consent.

Your Zurich policies include the following applicable Exclusions:

Fungus Liability Exclusion U UMB 165-A CW 7/99 from 6/1/05-6/1/07.

Fungus or Bacteria Exclusion U-UMB-385-B-CW 7/03 6/1/07-6/1/11.

These Exclusions preclude coverage for any liability, damage, loss cost or expense due to Fungus. Please see the attached exclusions for further review.

Based on the facts of the case, Mr. Chenault is alleging Bodily Injury due to the exposure of mold.

Page 3


Zurich is unable to provide coverage for this loss subject to the above exclusions in your policies.

Zurich continues to reserve any and all rights that it may have under its policies issued to PPP I – Victory Highlands Condominium Association, Inc. Zurich reserves its right to supplement or change this reservation of rights letter should additional information become known or should additional coverage defenses become known. As this matter develops further, you will be advised of any further legal principles and policy provisions that may be applicable to this matter.

If you have any additional information that may assist us in the investigation of this case, please advise us immediately. If you have any questions regarding this matter, I can be contacted at 847-969-4057.

Sincerely,


Norma Villegas
Claims Specialist III
American Guarantee and Liability Insurance Company



CERTIFIED MAIL

7012 0470 0002 1097 4701

STATE OF NEW JERSEY
DEPARTMENT OF BANKING AND INSURANCE
PO BOX 325
TRENTON, NJ 08625-0325

RETURN RECEIPT REQUESTED

ZURICH AMERICAN INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
830 BEAR TAVERN ROAD
WEST TRENTON NJ  08628